IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| **VE OPENING LLC,**<br><br>                    Plaintiff,<br><br>   v.<br><br>**SPRINKLR, INC.,**<br><br>                    Defendant. | C.A. No. 7:25-cv-362<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff VE Opening LLC files this Original Complaint for Patent Infringement against Sprinklr, Inc., and would respectfully show the Court as follows:

### I. THE PARTIES

1.   Plaintiff VE Opening LLC ("VE" or "Plaintiff") is a Texas limited liability company with its address at 17350 State Highway 249, Ste 220, Houston, TX 77064.

2.   On information and belief, Defendant Sprinklr, Inc. ("Sprinklr" or "Defendant") is a corporation organized and existing under the laws of Delaware with a place of business at 2201 E 6th St, Austin, Texas 78702.  Sprinklr has a registered agent at Corporation Service Company d/b/a CSC-Lawyers Incorp, 211 E. 7th Street, Suite 620, Austin, TX 78701.

### II. JURISDICTION AND VENUE

3.   This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.   On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its

1

business in this forum, including at least a portion of the infringements alleged herein at its place of business at 2201 E 6th St, Austin, Texas 78702.

5. Without limitation, on information and belief, within Texas and this District, Defendant has used the patented invention thereby committing, and continuing to commit, acts of patent infringement alleged herein. In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas and this District. Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Texas and this District, including at its place of business at 2201 E 6th St, Austin, Texas 78702. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Texas and this District. Defendant has committed such purposeful acts and/or transactions in Texas and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6. Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case including at its place of business at 2201 E 6th St, Austin, Texas 78702.

7. For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III. COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,916,079)

8. Plaintiff incorporates the above paragraphs herein by reference.

9. On March 13, 2018, United States Patent No. 9,916,079 ("the '079 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '079 Patent is titled

"Method and System for Enabling the Sharing of Information Between Applications on a Computing Device." A true and correct copy of the '079 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10. VE is the assignee of all right, title, and interest in the '079 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '079 Patent. Accordingly, VE possesses the exclusive right and standing to prosecute the present action for infringement of the '079 Patent by Defendant.

11. The invention in the '079 Patent relates to the field of methods for enabling the sharing of information between applications on a computing device. (Ex. A at col. 1:15-17).

12. The '079 Patent describes the technological problem that existed in the prior art. People relied on applications installed on computing devices, which are typically intended to address a particular function or a limited number of functions. (*Id.* at 1:21-25). For example, a calendar application may be used to schedule events and invite participants, whereas an email application can enable participants to message each other about the event. (*Id.* at 1:25-28). While each application on its own may be useful for a particular purpose, performance of a task may require the use of multiple applications. (*Id.* at 1:29-31). The multiple applications typically operate independently from each other; however, cooperation between the applications, such as through information sharing, would provide a better solution. (*Id.* at 1:32-35).

13. With the number of applications on computing devices continuing to grow, users may want or need to use several applications together to perform tasks rather than requiring separate use of each application. (*Id.* at 1:36-39). However, setting up the sharing of information between multiple applications may be difficult and confusion for a typical user and may be tedious even for an advanced user, particularly when the number of applications required to complete a

task is large. (*Id.* at 1:39-43). Therefore, there is a need for methods that enable sharing of information between multiple applications to allow users to perform related tasks in a more efficient and user-friendly manner. (*Id.* at 1:43-46). Recognizing the need, the inventor created a new technological method for sharing information between applications on a computing device related to searching across multiple applications and linking information between such applications. (*Id.* at 1:50-64). The claimed invention enables typical or basic users to take advantage of information sharing across multiple applications even though the users may not otherwise attempt such a challenge. (*Id.* at 6:35-40). The invention also results in time savings and efficiency in setting up information-sharing that may be realized even by sophisticated users of the computing device. (*Id.* at 5:40-42).

14.     **<u>Direct Infringement.</u>** Upon information and belief, Defendant directly infringes claim 1 of the '079 patent in Texas, in this District and elsewhere in the United States, by performing actions comprising using or performing the claimed method of enabling the sharing of information between a first application and a second application on a computing device by using and offering for sale Sprinklr's Universal Search ("Accused Instrumentality").

15.     Sprinklr, through use of its Universal Search, performs a method of enabling the sharing of information between a first application and a second application on a computing device. Sprinklr's Universal Search is highly effective for searching all data that has been unified, ingested, or processed by the Sprinklr Unified-CXM platform from its wide array of integrations and channels. It provides a "single pane of glass" for the customer experience data it manages. Sprinklr's Universal Search excels at finding various entities and content [information] that reside within or are unified by the Sprinklr platform itself. An example of this [information] from assets within Sprinklr (also known as "entities of Sprinklr") [first application] are below. Note that as an

4

alternative read, certain assets listed below may be identified as the [second application]. For instance, Messages and Conversations may come from social media posts from a [second application].

- Assets: Digital assets managed within Sprinklr's DAM.

- Campaigns, Dashboards, Cases, Macros, Rules, Tasks: All operational elements and reporting features within Sprinklr's Marketing, Service, and Social modules.

- Messages & Conversations: This is a core strength, allowing search across social media posts, direct messages, emails, live chats, and community discussions that Sprinklr has ingested or processed.

- Audience Profiles: Searching for customer profiles based on name, channel, tags, etc., where this profile data is unified in Sprinklr.

- Outbound Messages: Sent messages, posts, and their associated data.

- Internal Notes/Comments: Notes and internal communications related to cases or customer interactions within the platform.



(https://www.sprinklr.com/help/articles/universal-search/universal-search/64679bc230f12540268fb602).  Sprinklr's Universal Search further includes search results from third party applications (second application(s)).



(https://www.sprinklr.com/help/articles/universal-search/universal-search/64679bc230f12540268fb602).

16. Sprinklr, through use of its Universal Search, performs the step of from the first application, initiating a global search covering the first application and the second application. A user may initiate the Universal Search by using Command + K on a MacOS, or alternatively clicking on the Universal Search icon "in the top right corner of the Navigation Bar."



6





(https://www.sprinklr.com/help/articles/universal-search/universal-search/64679bc230f12540268fb602).

17. Sprinklr, through use of its Universal Search, performs the steps of receiving a global search request through the first application, wherein the global search request requests information across the first application and the second application; and in response to the reception of the global search request, prompting for a search term from a user. For example, once a user opens the Universal Search icon, Universal Search prompts for a search request:



(https://www.sprinklr.com/help/articles/universal-search/universal-search/64679bc230f12540268fb602). Universal Search further includes instructions of inputting a search term. An option to add a filter is disclosed as well:

(https://www.sprinklr.com/help/articles/universal-search/universal-search/64679bc230f12540268fb602).

18.     Sprinklr, through use of its Universal Search, performs the steps of receiving the search term; based on the received search term, automatically determining one or more corresponding candidate elements associated with the second application and presenting the determined one or more corresponding candidate elements associated with the second application for selection by the user. When a user inputs a search term, Universal Search looks at both the

term itself and the dynamic filters applied to display candidate elements. Universal Search specifically states that the filter options are based on both 1) the search term and 2) your personal and matching search results.



(https://www.sprinklr.com/help/articles/universal-search/universal-search/64679bc230f12540268fb602). Universal Search receives the search term and uses that search term to determine candidate elements associated with one or more second applications. In the example below, second applications include X and external news feed applications. The candidate elements are shown directly to the right of the second applications. Small icons next to the candidate elements indicate which third party applications those candidate elements are related to. For instance, a small "X" icon indicates that the candidate element is related to the second application X/Twitter. These candidate elements can be selected by a user.



(https://www.sprinklr.com/help/articles/universal-search/universal-search/64679bc230f12540268fb602). Sprinklr provides an example of a Universal Search use case regarding searching outbound messages. Citations for later claim elements below indicate that the selection of a candidate element discloses "presenting information related to the linked selected candidate element through the first application." To search an outbound message, a user may select an option through Universal Search:

10



(https://www.sprinklr.com/help/articles/universal-search/universal-search-outbound-message-option/64679bbd30f12540268fb601).

19.   Sprinklr, through use of its Universal Search, performs the step of receiving the selection of at least one of the candidate elements; and linking information between the first application and the second application. For example, when a user selects one of the elements, the linking of information is demonstrated by being able to click directly on the presented candidate elements from the second applications:

11



(https://www.sprinklr.com/help/articles/universal-search/universal-search/64679bc230f12540268fb602).

1. Select **Universal Search** icon in the top right corner of the **Navigation** bar.

2. Enter the URL of the tweet which you want to search on the Sprinklr platform.

3. Once that tweet is displayed, you can click on that Tweet and perform actions like share, reply, retweet, etc. as per your choice.

(https://www.sprinklr.com/help/articles/universal-search/universal-search-use-tweet-url-to-search-tweet-on-sprinklr/64679bbd8ea3c9635cf37423#To_Search_Displayed_Tweets). As mentioned above, a user may select a candidate element by clicking on it. Importantly, the candidate element displays a limited preview of information from within the second application it is associated with. For instance, the search term "wrong address" shows a Twitter/X partial match for a username in Twitter/X called "itswrongaddress."

12



(https://www.sprinklr.com/help/articles/universal-search/universal-search/64679bc230f12540268fb602). Sprinklr provides an example of a Universal Search use case regarding searching outbound messages, as shown above in the outbound message search example. After a user inputs a search for outbound messages, candidate elements are displayed.



13

(https://www.sprinklr.com/help/articles/universal-search/universal-search-outbound-message-option/64679bbd30f12540268fb601).

20. Sprinklr, through use of its Universal Search, performs the step of, responsive to receiving the selection of the candidate element, linking the selected candidate element with the first application such that a user may access the selected candidate element from the first application. A user may search an outbound message as part of Universal Search. The candidate elements are displayed when a user enters a search term.



(https://www.sprinklr.com/help/articles/universal-search/universal-search-outbound-message-option/64679bbd30f12540268fb601).

21. Sprinklr, through use of its Universal Search, performs the step of generating for the first application a selectable link that, when selected, is operable to enable access to information related to the second application.



(https://www.sprinklr.com/help/articles/universal-search/universal-search-outbound-message-option/64679bbd30f12540268fb601).

22. Sprinklr, through use of its Universal Search, performs the steps of receiving the selection of the linked selected candidate element through the first application; and responsive to the reception of the selection of the linked selected candidate element, presenting information related to the linked selected candidate element through the first application. Once a user selects the message (linked selected candidate element), a Third Pane opens which shows information related through Universal Search (the first application).

15



(https://www.sprinklr.com/help/articles/universal-search/universal-search-outbound-message-option/64679bbd30f12540268fb601).  Clicking on the resulting search link will provide a user with more information from Twitter through Sprinklr's app.  In the excerpt below, note that the user has not opened the X/Twitter application but is viewing information from within Universal Search.



16

(https://www.sprinklr.com/help/articles/universal-search/universal-search-use-tweet-url-to-search-tweet-on-sprinklr/64679bbd8ea3c9635cf37423#To_Search_Displayed_Tweets).

23. Defendant's customers also infringe claim 1 of the '079 Patent by using or performing the claimed method using the Accused Instrumentalities as described above. Furthermore, Defendant advertises, markets, and offers for sale the Accused Instrumentalities to its customers for use in a system in a manner that, as described above, infringes claim 1 of the '079 Patent. Exemplary advertising and marketing material is cited above.

24. **Indirect Infringement**. Upon information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement and contributing to the infringement of at least claim 1 of the '079 Patent in the State of Texas, in this District, and elsewhere in the United States, by providing the Accused Instrumentality for use as described above by Defendant's customers. Defendant advertised, offered for sale, and/or sold the Accused Instrumentality to its customers for use in a manner that Defendant knew infringed at least one claim of the '079 Patent. For example, Defendant provides marketing material and videos advertising that the Accused Instrumentality performs the claimed method of enabling the sharing of information between a first application and a second application on a computing device as claimed in claim 1 of the '079 Patent. (*Supra* ¶¶15-23 (identifying marketing materials and videos)).

25. On information and belief, since becoming aware of the '079 Patent and of the infringement through advertising and offering for sale the Accused Instrumentality for use by its customers, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the Accused Instrumentality to its customers and by aiding and abetting its use in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the Accused Instrumentality, Defendant knew that the use of the Accused

Instrumentality by its customers as instructed constituted direct patent infringement. Despite this knowledge, Defendant continued to encourage and induce its customers to use the Accused Instrumentality to infringe as described above and provided instructions for using the Accused Instrumentality to infringe, including through specification sheets, support, and user's guides. Exemplary materials are cited above. (*Supra* ¶¶15-23 (identifying marketing materials and videos)). Defendant therefore knowingly induced infringement and specifically intended to encourage and induce the infringement of the '079 Patent by its customers.

26. On information and belief, since Defendant became aware of the infringement at least as of the date of the service of the original Complaint, Defendant is and has been committing the act of contributory infringement by intending to provide the identified Accused Instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '079 Patent, and further knowing that the accused use of the Accused Instrumentality is not a staple article or commodity of commerce suitable for substantially non-infringing use. As described above, Defendant was aware that all material claim limitations are satisfied by the use and implementation of the Accused Instrumentality by Defendant's customers in the manner described above yet continued to provide the Accused Instrumentality to its customers knowing that it is a material part of the invention. (*Supra* ¶¶15-23 (identifying marketing materials and videos)). As described above, since learning of the infringement, Defendant knew that the use and implementation of the Accused Instrumentality by its customers was made and adapted for infringement of the '079 Patent. (*Id.*). A new act of direct infringement occurred each time a customer implemented and/or used the Accused Instrumentality in the manner described above. After Defendant became aware that the use of the Accused Instrumentality infringes at least one claim of the '079 Patent, Defendant knew that each such new

use was made and adapted for infringement of at least one claim of the '079 Patent and Defendant continued to advertise and provide the Accused Instrumentality for such infringing activities. (*Supra* ¶¶15-23 (identifying marketing materials and videos)). Furthermore, as described more fully above, the Accused Instrumentality has functionality designed to perform the steps in the manner described above and is therefore not a staple article or commodity of commerce suitable for substantially non-infringing use. (*Id.*).

27. Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '079 patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

28. Unless a preliminary and permanent injunction is issued enjoining Defendant and all others acting in active concert therewith from infringing the '079 Patent, Plaintiff will be greatly and irreparably harmed.

29. The asserted claim of the '079 Patent is a method claim to which the marking requirements are not applicable. Plaintiff has therefore complied with the marking statute 35 U.S.C. §287.

### IV.  JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

### V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a. Judgment that one or more claims of United States Patent No. 9,916,079 have been infringed, directly and indirectly, and either literally and/or under the doctrine of equivalents, by Defendant;

b. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein;

c. That Defendants be preliminarily and permanently enjoined from any further activity or conduct that infringes;

d. That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

August 22, 2025                                DIRECTION IP LAW

/s/ David R. Bennett
David R. Bennett (Illinois Bar No. 6244214)
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com

*Attorneys for Plaintiff*
*VE Opening LLC*